STATE OF NEBRASKA, APPELLANT, v. MODESTO C. VALENCIA, APPELLEE.

290 N. W. 2d 181

Filed March 11, 1980. No. 42795.

Brian C. Silverman and Michael J. Javoronok, for appellant.

James T. Hansen and Paul Rehurek, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

Involved in this appeal is the constitutionality of section 28-1202, R. S. Supp., 1978, which reads as follows: ''(1) Except as provided in subsection (2) of this section, any person who carries a weapon or weapons concealed on or about his person such as a revolver, pistol, bowie knife, dirk or knife with a dirk blade attachment, brass or iron knuckles, *or any other deadly weapon,* commits the offense of carrying concealed weapons.

''(2) It shall be an affirmative defense that the defendant was engaged in any lawful business, calling or employment at the time he was carrying any weapon or weapons, and the circumstances in which such person was placed at the time were such as to justify a prudent person in carrying the weapon or weapons, for the defense of his person, property or family.

"(3) Carrying concealed weapons is a Class IV felony." (Emphasis supplied.)

Defendant below, Modesto Valencia, hereinafter referred to as Valencia, was arrested at his place of employment, a packing house, on a charge not relevant to this appeal. As part of the arrest procedure, one of the arresting officers frisked Valencia to determine whether or not he was carrying any weapons upon his person. During the "pat down," a spring-operated switchblade knife was found in Valencia's left front pants pocket. Following a preliminary hearing on the matter, the State filed a two-count information against the defendant, charging him in the first count with violating section 28-512, R. S. Supp., 1978, theft by deception, and in count II with carrying a weapon concealed on or about his person, in violation of section 28-1202 (1), R. S. Supp., 1978. The defendant filed in the District Court for Scotts Bluff County a demurrer to the information on the grounds that count II, based upon section 28-1202, is unconstitutional and void because it is vague and indefinite on its face and as applied, and violates Article I, section 3, Constitution of the State of Nebraska, and the Fifth and Sixth Amendments to the Constitution of the United States; and also on the same date filed a motion to quash the information and each count thereof on the grounds that they are so vague, general, and indefinite as to violate the rights guaranteed to the defendant by the Fifth and Sixth Amendments to the Constitution of the United States. In addition, the defendant subsequently filed a motion to dismiss count II of the information based upon the allegation that section 28-1202, R. S. Supp., 1976, is unconstitutional and void because it is vague and indefinite on its face and as applied, and violates Article I, section 3, Constitution of the State of Nebraska, and the Fifth and Sixth Amendments to the Constitution of the United States.

Defendant's arraignment was postponed pending a hearing on the various motions filed by the defendant. The journal entry of the hearing on the motions reads in part as follows: "The Motion to Quash was argued to the Court. The Court sustains the Motion to Quash as to Count II of the information. The Court determined that a Motion to Quash is the correct motion to raise the issue of constitutionality. The Court finds that section 28-1202 (1) R. S. Supp. (1978) is unconstitutional as applied in the instant case for the reason that the weapon as disclosed by evidence at preliminary hearing does not fall within the specific types of knives prohibited but rather falls within the category of other 'deadly weapon,' and such category is unconstitutionally vague and overboard [sic]. The Court further determined the defendant had not waived his Motion to Quash by filing a demurrer, as both motions were intended to raise the question of constitutionality.

"Trial of the cause, set for April 20, 1979, is continued for thirty days to permit the State of Nebraska to appeal the ruling of the Court as to Count II."

The State has appealed from that order to this court. The record before us does not disclose whether Valencia was ever arraigned on this or any other charge; and it seems clear that the defendant has not as yet been placed in jeopardy.

In its brief filed in its appeal, the State sets forth three assignments of error as follows: "(1) The District Court erred in finding R. S. Supp. 28-1202 (1) (1978) unconstitutional as applied. (2) The District Court erred in finding the category of other 'deadly weapons' contained in R. S. Supp. 28-1202 (1) (1978) vague and overbroad. (3) The District Court erred in finding that the filing of a demurrer does not waive all defects which may be excepted to by a motion to quash." We conclude that the statute in question is constitutional, and reverse the order of

the District Court quashing count II of the information, and remand the matter for further proceedings.

It is a fundamental requirement of due process of law that a criminal statute be reasonably clear and definite. State v. Adams, 180 Neb. 542, 143 N. W. 2d 920 (1966). We have frequently stated that a crime must be defined with sufficient definiteness and there must be ascertainable standards of guilt to inform those subject thereto as to what conduct will render them liable to punishment thereunder. The dividing line between what is lawful and unlawful cannot be left to conjecture. A crime and the elements constituting it must be so clearly expressed that the ordinary person can intelligently choose in advance what course it is lawful for him to pursue. State v. Huffman, 202 Neb. 434, 275 N. W. 2d 838 (1979); State v. Adams, *supra*. Penal statutes prohibiting the doing of certain things in providing a punishment for their violation should not admit of such a double meaning that the citizen may act upon one conception of its requirements and the courts upon another. State, ex rel. English v. Ruback, 135 Neb. 335, 281 N. W. 607 (1938); Connally v. General Const. Co., 269 U. S. 385, 46 S. Ct. 126, 70 L. Ed. 322 (1926). We have also held, however, that it is not necessary for a penal statute to be written so as to be beyond the mere possibility of more than one construction. Although a penal statute is required to be strictly construed, it should be given a sensible construction and general terms therein should be limited in their construction and application so as not to lead to injustice, oppression, or an absurd consequence. State v. Robinson, 202 Neb. 210, 274 N. W. 2d 553 (1979); State v. Nance, 197 Neb. 257, 248 N. W. 2d 339 (1976). Moreover, the prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. All the Due Process Clause requires is that the law give sufficient warn-

ing that people may conform their conduct so as to avoid that which is forbidden. State v. Shiffbauer, 197 Neb. 805, 251 N. W. 2d 359 (1977); State v. Briner, 198 Neb. 766, 255 N. W. 2d 422 (1977).

Appellee contends that the words "other deadly weapon" as used in section 28-1202 (1), R. S. Supp., 1978, are so vague and overbroad as to render the statute unconstitutional, and points out in his brief on appeal certain examples which would appear to make certain innocent conduct criminal in nature, such as a meat cutter in a packing house carrying a knife under his apron, or a grandmother in possession of knitting needles. In this connection we point out that counsel for both parties have apparently overlooked the fact, or have ignored the fact, that the term "deadly weapon" has been statutorily defined in another section of the new Criminal Code. Section 28-109, R. S. Supp., 1978, provides in part: "As used in this code, unless the context otherwise requires: * * * (7) Deadly weapon shall mean any firearm, knife, bludgeon, or other device, instrument, material, or substance, whether animate or inanimate, *which in the manner it is used or intended to be used* is capable of producing death or serious bodily injury; * * *." (Emphasis supplied.) Applying this definition to section 28-1202 (1), it is clear that the Legislature in enacting that statute has designated certain weapons such as revolvers, pistols, bowie knives, dirks or knives with a dirk blade attachment, and brass or iron knuckles, as deadly weapons *per se;* and the manner of the actual or intended use of such designated weapons is immaterial under the statute in question. However, with reference to the catchall phrase "or any other deadly weapon" as contained in section 28-1202 (1), it is the element of actual or intended use which renders the words "other deadly weapons" sufficiently definite to provide citizens an opportunity to conform their conduct to the statute; and to dis-

tinguish between situations involving culpable concealment, and those involving innocent concealment. It is this element of use or intended use of the object which saves the term "deadly weapon" from being vague or overbroad.

Since the weapon involved in this case, a switchblade knife, is not of the specific type enumerated in section 28-1202 (1), R. S. Supp., 1978, we have serious doubts as to whether a switchblade knife is a deadly weapon *per se,* that decision being one for the Legislature to determine if it chooses to amend that statute in question. We conclude, however, that the question of whether an object or weapon not specifically mentioned in the statute is a "deadly weapon" is clearly a question of fact to be decided by the trier of fact in prosecutions under this statute, and the resolution of this question will depend upon the evidence adduced as to the use or intended use of the object in question.

However, even if the term "deadly weapon" were not to be defined in our statutes, we would still have serious question as to whether the use of that term would render the statute in question unconstitutional because of vagueness or overbreadth. In Stout v. Dallman, 492 F. 2d 992 (6th Cir., 1974), the court held that the words "other dangerous weapon" in a statute providing that no person, while armed with a pistol, knife, or other dangerous weapon, shall steal from the person of another anything of value, were not so vague as to render the statute unconstitutional. The court further held that difficulty in determining whether certain marginal offenses are within the meaning of language under attack as vague does not automatically render a statute unconstitutional for indefiniteness; and the test is whether the language conveyed a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. In that case the court also pointed out: "The term 'dangerous weapon'

also appears without definition in the federal bank robbery statute. 18 U.S.C. § 2113(d). A considerable number of convictions have been upheld under that Act." See, also, State v. Lewis, 184 Neb. 111, 165 N. W. 2d 569 (1969). We therefore are of the opinion that section 28-1202 (1), R. S. Supp., 1978, is neither vague nor overbroad, and we so hold.

In its brief, the State also asks this court for guidance with reference to the proper method or procedure to attack the constitutionality of a statute upon which an information is based. In its order, the District Court stated that a motion to quash was proper in this case, but indicated that a demurrer might also be an additional method of procedure used to raise the issue of constitutionality. The Nebraska statutes provide that the accused may except to an indictment by (1) a motion to quash, (2) a plea in abatement, or (3) a demurrer. § 29-1807, R. R. S. 1943. Section 29-1808, R. R. S. 1943, provides: "A motion to quash may be made in all cases when there is a defect apparent upon the face of the record, including defects in the form of the indictment or in the manner in which an offense is charged." Section 29-1809, R. R. S. 1943, provides: "A plea in abatement may be made when there is a defect in the record which is shown by facts extrinsic thereto." Section 29-1810, R. R. S. 1943, provides: "The accused may demur when the facts stated in the indictment do not constitute an offense punishable by the laws of this state, or when the intent is not alleged, when proof of it is necessary to make out the offense charged." Finally, section 29-1812, R. R. S. 1943, provides: "The accused shall be taken to have waived all defects which may be excepted to by a motion to quash, or a plea in abatement, by demurring to an indictment or pleading in bar or the general issue."

In the instant case, it appears that the motion to quash and the demurrer were both filed the same

day, and ruled on at the same hearing. Under these facts, we do not believe that section 29-1812, R. R. S. 1943, would apply so as to preclude the accused from using a motion to quash to attack the constitutionality of the statute. In State v. Evjue, 253 Wis. 146, 33 N. W. 2d 305 (1948), the court held that an information which charges an offense in language of a statute which is unconstitutional states no offense and the defect is jurisdictional. The general rule is stated in 21 Am. Jur. 2d, Criminal Law, § 464, p. 461, as follows: "The question as to the validity of the statute on which the information is based is not properly raised by a plea in bar. Such question, if it goes to the constitutionality of the statute on its face, should be raised by demurrer or by motion to quash. If the statute is generally constitutional, and for some circumstance peculiar to the situation of the accused is unconstitutional, that is a matter which is properly triable under the general issue or a plea of not guilty." In the instant case, therefore, since the defect in question was a matter of interpretation of the statute itself, it would appear that either a motion to quash or a demurrer would be a proper method to challenge the constitutionality of the statute. If it be contended that the question of the constitutionality in this case only involved its application to this defendant by virtue of extraneous facts and circumstances, then, according to the foregoing authority, the constitutionality of the statute could and should be contested at trial under a plea of not guilty. In this case, so far as we are able to ascertain, a trial has not yet been held in the instant case.

We conclude that the District Court was in error in sustaining the motion to quash the information on the ground that the statute in question, section 28-1202 (1), R. S. Supp., 1978, was unconstitutionally vague and overbroad. The order of the District Court is reversed, and the cause is remanded, under section 29-2316, R. R. S. 1943, for further proceedings

consistent with this opinion, as it appears that the defendant has not as yet been placed in legal jeopardy.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

CLINTON, J., concurring in part and dissenting in part.

I join in the portion of the majority opinion which holds the statute constitutional. I dissent from that portion of the opinion which expresses doubt that the switchblade knife in evidence is a deadly weapon per se under the provisions of section 28-1202 (1), R. S. Supp., 1978. I believe the design and the manner in which the knife functions demonstrate clearly that it is a deadly weapon per se and that the intention of the possessor is immaterial.

A switchblade knife is one which is made to open automatically and one of its primary purposes is use as a weapon. Precise Imports Corporation v. Kelly, 378 F. 2d 1014 (2nd Cir., 1967).

The knife here consists of a 3½-inch spring-powered blade and a handle about 5 inches long. On the handle is a button which activates the blade which, when in the closed position, is recessed in the handle. One end of the handle contains a slit or opening through which, when the button is pressed forward, the blade projects with such speed that the eye cannot follow the movement. The blade can be retracted in similar fashion by pushing the button in the opposite direction. The shape and strength of the blade indicate that it is designed for piercing, i.e., stabbing. The shape and design of the handle indicate the same purpose. At the end of the handle through which the blade is propelled are two metal projections or knobs, the apparent purposes of which are to enable the user to apply forward force and leverage by use of the forefinger and thumb; thus before the blade is projected, if the knife is held against a body, the pushing of the button would

cause the blade to penetrate. These projections also afford leverage if the knife is used in the more conventional fashion of a dagger. Patently, the knife is designed as a weapon. It can obviously be deadly. It is in essence a dirk except that the blade is shorter and retractable. A dirk is one of the weapons specifically listed in the statute. Where, in the statute, general words follow an enumeration of particular classes of things, the general words will generally be construed as applying to things of the same general class as though specifically enumerated. In re Estate of Grainger, 151 Neb. 555, 38 N. W. 2d 435; State v. End, 232 Minn. 266, 45 N. W. 2d 378. The switchblade is clearly within the class of the enumerated items.

Where a weapon is of such a character as to admit of but one conclusion in that respect, the question of whether it is a "deadly weapon" within the statute is a question of law, but where a weapon is such that its deadly character depends on the manner and circumstances of its use, the question is a question of fact for the jury. Angel v. Commonwealth, 289 Ky. 281, 158 S. W. 2d 640.

BOSLAUGH, J., joins in this concurrence and dissent.

WHITE, J., concurring.

I agree that section 28-1202 (1), R. S. Supp., 1978, is not unconstitutional and I agree with the remainder of the majority opinion that a weapon not specified by the statute may be possessed unlawfully, but only upon proof of the possession itself as well as such other facts and circumstances which would prove "* * * the manner it is used or intended to be used is capable of producing death or serious bodily injury; * * *." § 28-109 (7), R. S. Supp., 1978. Mere possession of such a weapon, standing alone, would not sustain a conviction.

I am authorized to state that McCown, J., joins in this concurrence.

KRIVOSHA, C. J., joins in this concurrence.